**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Atha Lennette PARSONS,
Defendant–Appellant.**

**No. 92–5613.**

United States Court of Appeals,
Fourth Circuit.

Argued March 29, 1993.

Decided May 7, 1993.

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, WV, argued (Hunt L. Charach, Federal Public Defender, on brief), for defendant-appellant.

R. Brandon Johnson, Asst. U.S. Atty., Charleston, WV, argued (Michael W. Carey, U.S. Atty., Charleston, WV, on brief), for plaintiff-appellee.

Before HALL, MURNAGHAN, and WILLIAMS, Circuit Judges.

## OPINION

K.K. HALL, Circuit Judge:

The defendant, Atha Lennette Parsons, was convicted of violating 18 U.S.C. § 844(i) (arson of a building used in an activity affecting interstate commerce) and § 1341 (mail fraud). She appeals, arguing that the burned building was not used in an activity "affecting interstate commerce" and that the district court erred by communicating with the jury in her absence. We reject these arguments and affirm.

### I.

In 1983, Parsons purchased a small single-family house at 205 30th Street, Charleston, West Virginia. Parsons lived in the house for a short time before converting it to rental property. In 1986, Parsons began having difficulty with her tenant. She instituted eviction proceedings, and on November 21, 1986, her tenant vacated the premises.

On November 30, 1986, Parsons informed the Broadway Gardens (the apartment complex in which she lived) that:

Due to some unfortunate circumstances it has become necessary for me to give you a tentative Notice of Intent to Vacate. I say "Tentative" because I am hoping between this date and February 1, 1987 my circumstances will have changed and I will be able to continue as a resident [of the] Broadway Gardens.

In early January, Parsons notified Broadway Gardens that she would vacate her apartment on February 1, 1987.

According to the evidence adduced by the government, Parsons then asked David Eastwood, a member of the Pagans motorcycle gang, to burn the house so that she could collect the insurance money. Eastwood agreed, and he recruited Joseph Holmes to act as his accomplice. In January 1987, Eastwood, Holmes, and Parsons walked through the house and discussed the arson. On January 29, 1987, Eastwood and Holmes burned the house.

At the time of the fire, the house was identified as "rental property" on Parsons' insurance policy. On February 15, 1987, she mailed a sworn proof of loss statement to her insurer, stating that the fire was not the result of any act or design on her part. On April 23, 1987, Parsons received a settlement check from her insurer. The next day, she wrote a $1,500 personal check to Eastwood annotated as a "personal loan."

Eastwood and Holmes were subsequently indicted on unrelated matters. Both pleaded guilty and agreed to testify regarding their involvement in the 30th Street fire. The government indicted Parsons on one count of arson and one count of mail fraud.

At trial, the government's chief witnesses were Eastwood and Holmes. Parsons took the stand in her own defense and denied everything.

At 11:30 a.m., the case was submitted to the jury. At 2:13 p.m., the district court informed counsel that it had received a note from the jury inquiring whether its decision to acquit or convict had to be unanimous. With the approval of counsel, the court replied "yes."

At 4:00 p.m., the district court sent a note to the jury asking whether it was "making

progress." The jury replied that it was split "10 to 2" but was making "progress." Realizing that a potential *Brasfield*[1] situation had arisen, the district court immediately informed the jury that it was not to "disclose, numerically or otherwise, how you stand, until such time, if at all, as a unanimous verdict has been reached on a given count." Neither the defendant nor any of the lawyers were present during these communications.

At 4:56 p.m., the jury returned a verdict of guilty on both counts. Immediately following the verdict, the district court informed Parsons' counsel of the communications between the court and jury.

On the arson count, Parsons was sentenced to one year of imprisonment and ordered to pay restitution in the amount of $55,000; for the mail fraud, she received a term of five years of probation to be served following her release from prison. She appeals.

## II.

Pursuant to the federal arson statute, it is a crime to destroy by fire "any building . . . used . . . in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i). Parsons makes a two-pronged argument against § 844(i)'s application: (a) that the rental of a single family house, with no other interstate commerce nexus, is outside the statute's scope; and (b) that even if the rental of a single-family house is within the statute, the 30th Street house was no longer rental property at the time of the fire.

### A. *Does a rented single-family dwelling affect interstate commerce?*

In *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985),

the Supreme Court held that the rental of a two-unit apartment building affected interstate commerce:

By its terms, however, the statute only applies to property that is "used" in an "activity" that affects commerce. The *rental of real estate is unquestionably such an activity. . . .* [T]he local rental of an apartment unit is merely an element of a much broader commercial market in rental properties. The Congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.

*Id.* at 862, 105 S.Ct. at 2457 (emphasis supplied) (footnote omitted).

Resolution of this case requires no complicated exegesis regarding federalism or the broad expanse[2] of the Interstate Commerce Clause. U.S. Const. art. I, § 8. There is no substantive difference between the two-unit apartment in *Russell* and Parsons' single-family house; therefore, the plain language of *Russell* controls. If the house was "rental property" at the time of the arson, it was used in an activity that affects interstate commerce, and Parsons' conduct was within the statute.[3] *See United States v. Medeiros,* 897 F.2d 13, 16 (1st Cir.1990) ("*Russell* thus holds that rental property is *per se* property used in an activity affecting interstate commerce.") (citations omitted).

### B. *Was the evidence sufficient to support the jury's finding that the house was "rental property" at the time of the arson?*

In response to the district court's special interrogatories, the jury found that the 30th

---

**1.** *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), bars the court from inquiring into the jury's numerical division.

**2.** Congress' power to regulate pursuant to the Interstate Commerce Clause is exceptionally broad, *see Wickard v. Filburn,* 317 U.S. 111, 127–28, 63 S.Ct. 82, 90–91, 87 L.Ed. 122 (1942) ("That appellee's own contribution to the demand for wheat may be trivial by itself is not enough to remove him from the scope of federal regulation where, as here, his contribution, taken together with that of many others similarly situated, is far from trivial."); *Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 1361, 28

L.Ed.2d 686 (1971) ("Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.") (quoting *Maryland v. Wirtz,* 392 U.S. 183, 193, 88 S.Ct. 2017, 2022, 20 L.Ed.2d 1020 (1968)), and *Russell* establishes that the arson statute expresses an intent by Congress to exercise its full power. *Russell,* 471 U.S. at 859, 105 S.Ct. at 2456.

**3.** We express no opinion on the circumstances required to bring a private residence that is not "rental property" within the statute.

Street house was rental property on January 29, 1987. Parsons argues that the evidence was insufficient to support this factual finding.

Appellate review of the jury's finding is conducted pursuant to the deferential *Jackson* standard:

Our assessment considers the evidence in the light most favorable to the government and asks whether, considering it in that light, *any* rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt.

*United States v. Vogt,* 910 F.2d 1184, 1193 (4th Cir.1990) (relying on *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), and *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991); *see also United States v. Russell,* 971 F.2d 1098, 1109 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993).

 We believe that the jury's finding that the property was "rental property" at the time of the fire clearly passes muster. First, the house had been used as rental property for two to three years before the fire. Even though it was vacant at the time of the fire, vacancy alone does not constitute a "removal" from the rental market. *See United States v. Doby,* 872 F.2d 779 (7th Cir.1989) (property in interstate commerce when its owner burned a two-unit apartment building that had been vacant for six months but never taken off the rental market); *United States v. Mayberry,* 896 F.2d 1117 (8th Cir.1990) (temporary closure of a previously going commercial enterprise does not defeat the claim that interstate commerce is affected under § 844(i)). Second, at the time of the arson, the 30th Street house was insured as rental property. Third, once the jury concluded that Parsons commissioned the arson (a decision supported by sufficient evidence), it was certainly rational to also conclude that Parsons never intended to move into the house or to remove it from the rental market. Simply put, the jury concluded that

she planned to have the house burned and that the Broadway notice was merely a cover.

Although a jury could conceivably have accepted Parsons' version of the evidence and concluded that the house was no longer rental property, this jury did not. Under the circumstances of this case, the jury's decision to reject Parsons' self-serving testimony was supported by sufficient evidence and the verdict must be upheld.

### III.

During the jury's deliberation, the district court, acting *sua sponte,* sent two notes to the jury. The first note read, "Please advise whether you are making progress toward reaching a verdict." [4] The jury foreman replied, "The first time we assessed our numbers (around 2 pm) we were split 8 to 4. We are now 10 to 2. Progress is steady but slow." The district court then sent a second note, in response to the jury's revelation of its numerical division, stating:

Thank you for your previous response to my note. Please remember in future communications that you are not to disclose, numerically or otherwise, how you stand, until such time, if at all, as a unanimous verdict has been reached on a given count.

Thirty minutes later, the jury reached a unanimous verdict that Parsons was guilty on both counts.

### A. *Were the district court's notes improper?*

Parsons argues that the district court's first note had the effect of inquiring into the jury's numerical division and that the court's inquiries "coerced" the jury.

 In *Brasfield,* the Supreme Court established that it is *per se* error for a court to inquire into the jury's numerical division. *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926); *Ellis v. Reed,* 596 F.2d 1195, 1197 (4th Cir.), *cert. denied,* 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979). The problem with Parsons' *Brasfield* claim is that the district court never asked the jury to reveal its numerical division—it

---

4. During the post-trial hearings, the court indicated that it was attempting to determine wheth-

er to make dinner arrangements for the jurors.

merely asked the jury whether it was "making progress" toward a verdict. Indeed, the district court's jury instructions had specifically instructed the jurors to *not* reveal their numerical division to anyone, *including the district court*.[5]

Acceptance of Parsons' argument would require us to extend a prophylactic rule designed to protect the jury from coercion into a rule requiring *per se* reversal if the jury reveals its numerical division. We decline to do so. The district court had instructed the jury to keep its numerical division secret— the jury foreman violated the district court's previous instruction by voluntarily interjecting the jury's numerical division in response to a neutral inquiry. *See United States v. Hotz,* 620 F.2d 5, 7 (1st Cir.1980) (no error if jury voluntarily reveals its numerical division); *United States v. Lash,* 937 F.2d 1077, 1085 (6th Cir.1991) (same); *United States v. Jennings,* 471 F.2d 1310, 1313–1314 (2d Cir.) (same), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973); *United States v. Mack,* 249 F.2d 321, 324 (7th Cir.1957) (draws distinction between improper inquiry into the jury's numerical division and proper "inquiry of the jury as to the progress of their deliberations"), *cert. denied,* 356 U.S. 920, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958). Under these circumstances, *Brasfield* does not apply.

 We are equally unpersuaded by Parsons' claim that the notes coerced her jury. The first note was neutral—"Please advise whether you are making progress ...". The second note clearly contemplates that the jury might never come to a unanimous conclusion—"until such time, if at all, as a unanimous verdict has been reached on a given count." The weakness of Parsons' claim is apparent when the potential coercion from this innocuous inquiry is measured against the "dynamite" or *Allen* charge that may properly be delivered to a hung jury. *See United States v. Allen,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Lowenfield v.*

*Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

B. *Did the court's ex parte communication with the jury violate Parsons' right of "presence"?*

■ Parsons also complains that the *ex parte* communications violated her constitutional, statutory, and common law rights to be present at every stage of the criminal proceedings.

On appeal, the government concedes that the district court violated Fed.R.Crim.P. 43(a) ("The defendant shall be present at ... every stage of the trial ...") by communicating with the jury outside of the presence of Parsons and her lawyer.[6] *See United States v. Harris,* 814 F.2d 155, 157 (4th Cir.1987) (technical violation of Rule 43(a) for judge to respond to a question posed by the jury in the defendant's absence); *United States v. Speight,* No. 91–5583, 1992 WL 198089 (4th Cir. August 18, 1992) (government conceded that Rule 43(a) was violated when the district court gave the jury copies of the court's instructions in the defendant's absence after the deliberations had begun).

Even if Parsons' right of presence was violated, reversal is not required unless the error was harmful. Fed.R.Crim.P. 52(a); *Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975). We conclude, as we have frequently done with technical violations of the "right of presence", *see Harris,* 814 F.2d at 157; *Speight,* No. 91–5583, slip op. at p. 3, that any error was harmless beyond a reasonable doubt.

IV.

Accordingly, we affirm Parsons' convictions.

**AFFIRMED.**

---

5. The district court gave the following jury instruction on this point:

 Bear in mind also that you are not to reveal to anyone, *not even the court,* how you stand, numerically or otherwise, on the question of the guilt or innocence of the accused until you have reached a unanimous verdict.

6. As a threshold matter, we believe that there might be an exception under Rule 43(a) for the court to conduct administrative or housekeeping duties. However, for the purposes of this case, we will accept the government's stipulation that the district court erred.