

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-1997

# United States v. Gaydos

Precedential or Non-Precedential:

Docket 95-3468

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"United States v. Gaydos" (1997). *1997 Decisions.* Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95-3468

———————

UNITED STATES OF AMERICA,

Appellee

v.

OLGA GAYDOS,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 95-53)

———————

Submitted under Third Circuit LAR 34.1(a)
January 22, 1997

BEFORE:   NYGAARD and LEWIS, Circuit Judges,
and SCHWARZER, District Judge*

* The Honorable William W. Schwarzer, Senior District Judge for
  the Northern District of California, sitting by designation.

(Opinion Filed March 14, 1997)

———————

Bonnie R. Schlueter
Shaun E. Sweeney
Office of the U.S. Attorney
633 U.S. Courthouse
Pittsburgh, Pa. 15219

Counsel for the Appellee

Karen S. Gerlach
Office of the Federal Public Defender
960 Penn Avenue
415 Convention Tower
Pittsburgh, Pa. 15222

Counsel for the Appellant

_____

OPINION OF THE COURT

_____

NYGAARD, *Circuit Judge*:

Olga Gaydos appeals her conviction for malicious destruction of property by means of fire, contending that the evidence at trial did not meet the interstate commerce nexus required under 18 U.S.C. § 844(i). She also argues that the district court failed to make the required findings to support her sentence and restitution order; and, that the district court improperly refused to reach the merits of her untimely post-trial motions for judgment of acquittal and for a new trial. We conclude that the government failed to prove the jurisdictional element of 18 U.S.C. § 844(i), and will reverse her conviction on that count. We will also vacate the restitution order and remand the matter for the district court to make the required findings and, if indicated, enter a new order of restitution. In all other respects, we will affirm.

I.

Olga Gaydos owned a house located on Shadeland Avenue in Pittsburgh, Pennsylvania that she rented to William Minor, Jeannie McComb and their children. In December 1992, a fire of incendiary origin damaged its garage. Kenneth Evans testified

2

that he saw David Minor (William Minor's brother) coming out of the garage at approximately the same time the garage was afire. There was also testimony that Gaydos offered two other tenants $15,000 each to burn down the house and that she had suggested starting a fire in the garage. Gaydos filed an insurance claim with her homeowner's insurance carrier for damage to the garage and contents allegedly lost in the fire.

In June 1993, Fidelity Savings Bank began foreclosure proceedings on the property. While the foreclosure proceedings were pending, Gaydos met with Jeannie McComb to discuss a lead contamination problem the Health Department had found at the Shadeland Avenue house. McComb testified that at this meeting Gaydos told her that she (Gaydos) intended to burn down the house. Gaydos and McComb then supposedly struck a deal whereby Gaydos would allow McComb, William Minor, and their children, to move to another house where they could live rent-free if they remained silent about the fire Gaydos was planning for the Shadeland Avenue house.

Soon after, Gaydos discussed the lead problem with William Minor. According to Minor's testimony, Gaydos told him that she did not want to put any money into the house to correct the lead problem. Gaydos also allegedly offered Minor $10,000 to burn down the house, which he refused. Minor, McComb and their children, did, however, leave the house and moved into another house owned by Gaydos. Approximately two weeks later, the

3

Shadeland Avenue house burned to the ground in a fire determined to be of incendiary origin. Gaydos again submitted a claim to her homeowner's insurance carrier.

Gaydos was charged in a six count indictment alleging four counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 (Counts 1-4), one count of use of fire to commit a felony in violation of 18 U.S.C. §§ 844(h)(1) and (2) (Count 5), and one count of malicious destruction of property by means of fire in violation of 18 U.S.C. § 844(i) (Count 6). Her codefendant, David Minor, was charged in two of the mail fraud counts (Counts 1 and 2). Gaydos was found guilty on all counts and David Minor was acquitted of the two charges against him.

Gaydos was sentenced to 51 months in prison for mail fraud and malicious destruction of property by means of fire, and to 60 months for use of fire to commit a felony. The district court ordered the sentences to run consecutively for a total of 111 months, to be followed by supervised release for three years. The court also ordered restitution in the amount of $190,139.42.

## II.

Gaydos challenges her conviction for malicious destruction of property by means of fire, contending that there was insufficient evidence for the jury to conclude that the government had satisfied the jurisdictional element of 18 U.S.C. § 844(i), which requires the government to prove that the property was used in an activity affecting interstate commerce.

4

She contends that a vacant and uninhabitable building, with neither prospect nor intention of being returned to the stream of commerce, cannot satisfy the interstate commerce nexus required for a conviction under § 844(i).

Gaydos also argues that the district court committed two sentencing errors. First, she asserts that a vacant and uninhabitable building cannot be characterized as a "dwelling" for purposes of Section 2K1.4(a)(1)(B) of the United States Sentencing Guidelines. Second, she contends that the district court did not make the findings of fact necessary to support the restitution order it imposed.

Gaydos' final argument on appeal is her claim that the district court erred by finding that it lacked jurisdiction to consider her untimely post-trial motions for judgment of acquittal and for a new trial.

### III.

Section 844(i) provides in pertinent part:
Whoever maliciously damages or destroys . . . by means of fire or an explosive, any building, vehicle, or other real property or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than twenty years . . . .

In Russell v. United States, 471 U.S. 858, 105 S.Ct. 2455 (1985), the Supreme Court held that § 844(i) could be constitutionally applied to a rented apartment building. The Court first noted that the statute "express[ed] an intent by Congress to exercise its full power under the Commerce Clause."

5

471 U.S. at 859, 105 S.Ct. at 2456. The Court next determined that the legislative history of § 844(i) suggested that Congress intended the statute to protect "all business property, as well as some additional property that might not fit that description, but perhaps not every private home." Id. at 862, 105 S.Ct. at 2457. Noting that the express terms of the statute only applied to property that was "used" in an "activity" that affects commerce, the Court held that "[t]he rental of real estate is unquestionably such an activity." Id. The Court further opined that the local rental of an apartment unit is an element of a much broader commercial market in rental properties to which congressional power to regulate extends. Id. (citations omitted). Because Russell was renting his apartment building to tenants at the time he attempted to burn it, the Court concluded that the property was being used in an activity affecting commerce within the meaning of § 844(i) and affirmed his conviction.

Gaydos concedes that Russell clearly stands for the proposition that renting real estate is an activity which affects interstate commerce within the meaning of § 844(i). She argues, however, that Russell is inapposite. First, Gaydos asserts that the Supreme Court's recent decision in United States v. Lopez, 115 S.Ct. 1624 (1995), calls the constitutionality of § 844(i) into question. Second, she contends that even if § 844(i) is facially constitutional, the evidence was insufficient to prove

6

beyond a reasonable doubt that the house on Shadeland Avenue was being used in an activity affecting interstate commerce at the time it was destroyed by fire. We are only persuaded by Gaydos' second argument.

A.

Gaydos asserts that the district court lacked subject matter jurisdiction over her alleged offense because § 844(i) exceeds the authority of Congress to regulate commerce under the Commerce Clause. In support of her argument, Gaydos relies on the Supreme Court's recent decision in Lopez. Lopez, she argues, stands for the proposition that criminal statutes that regulate activities affecting interstate commerce pass constitutional muster only where the regulated activity "substantially affects" interstate commerce.

In Lopez, the Supreme Court invalidated the Gun-Free School Zones Act of 1990, which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A) (1994); Lopez, 115 S.Ct. at 1626. The Court first observed that § 922(q) "neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce." Id. at 1626. It then identified three broad categories of activity that Congress may regulate under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities

7

of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate commerce; and, (3) those activities that substantially affect interstate commerce. Id. at 1629-30.

Quickly disposing of the first two categories, the Lopez Court focused on the third category. The Court held that the statute could not "be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." Id. at 1631. The statute failed this test, the Court said, because "by its terms," it had "nothing to do with `commerce' or any sort of economic enterprise," id. at 1630-31, nor was it "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated," id. at 1631. Moreover, the Court noted that § 922(q) contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the [activity] in question affects interstate commerce," id., and that Congress had made no legislative findings that the activity so affected interstate commerce, id. at 1631-32. Without a more definite connection to interstate commerce, the Court concluded, upholding the statute would improperly allow Congress to "regulate . . . all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce," id. at 1632, and exceed the

8

proper limits of the federal government's power.

We conclude that Lopez does not render § 844(i) unconstitutional. Unlike the statute at issue in Lopez, § 844(i) contains a jurisdictional element which ensures, on a case-by-case basis, that the property in question must be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce . . . ." 18 U.S.C. § 844(i). The jurisdictional element in § 844(i) makes the holding in Lopez readily distinguishable. See, e.g., United States v. McMasters, 90 F.3d 1394, 1398 (8th Cir. 1996), cert. denied, 117 S.Ct. 783 (1997); United States v. DiSanto, 86 F.3d 1238, 1245 (1st Cir. 1996); United States v. Sherlin, 67 F.3d 1208, 1213-14 (7th Cir. 1995), cert. denied, 116 S.Ct. 795 (1996); see also United States v. Bishop, 66 F.3d 569, 585 (3d Cir.) (holding that the jurisdictional element contained in the federal carjacking statute, 18 U.S.C. § 2119, "wholly distinguishes Lopez and renders section 2119 constitutional"), cert. denied, 116 S.Ct. 681 (1995). Moreover, as expressly noted in Russell, 471 U.S. at 861-62 n.9, 105 S.Ct. at 2457 n.9, the legislative history of § 844(i) reflects Congress's concern that it not exceed its constitutional authority under the Commerce Clause, and Congress's finding that the statute was necessary to protect interstate commerce.

We believe that Russell's interpretation of § 844(i), and its holding, that the statute constitutionally regulates arson of

9

business property that satisfies the requisite jurisdictional element, is still authoritative precedent. Accordingly, we join the other circuits that have concluded that § 844(i) remains constitutionally viable under Lopez. See, e.g., McMasters, 90 F.3d at 1398-99; United States v. Gomez, 87 F.3d 1093, 1094 (9th Cir. 1996); DiSanto, 86 F.3d at 1246; United States v. Denalli, 73 F.3d 328, 329 (11th Cir. 1996), amended in part, 90 F.3d 444 (11th Cir. 1996); Sherlin, 67 F.3d at 1213-14; United States v. Martin, 63 F.3d 1422, 1427 (7th Cir. 1995). Because § 844(i) remains constitutionally valid under Lopez, we conclude that the district court had subject matter jurisdiction over Gaydos' alleged offense.

B.

Gaydos' best argument is that the evidence was insufficient to satisfy the interstate commerce nexus necessary to support her conviction under § 844(i) because the government could not prove beyond a reasonable doubt that the house on Shadeland Avenue was used, or intended to be used, in an activity affecting interstate commerce at the time of the fire. Gaydos did not preserve this issue for appeal by filing a timely motion for a judgment of acquittal, so we review the sufficiency of the evidence under a plain error standard. United States v. Zolicoffer, 869 F.2d 771, 774 (3d Cir. 1989); United States v. Wright-Barker, 784 F.2d 161, 170-71 (3d Cir. 1986); Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they

10

were not brought to the attention of the court.").

In Zolicoffer, we held that "the failure to prove one of the essential elements of a crime is the type of fundamental error which may be noticed by an appellate court notwithstanding the defendant's failure to raise it in the district court." 869 F.2d at 774 (citing Strickland v. United States, 339 F.2d 866, 868 (10th Cir. 1965)). We believe that affirming a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt "affect[s] substantial rights," and seriously impugns "the fairness, integrity and public reputation of judicial proceedings." See United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993). Therefore, we will review the substance of Gaydos' claim.

Russell established that renting real estate is an activity that affects interstate commerce for purposes of § 844(i). 471 U.S. at 862, 105 S. Ct. at 2457. Courts interpreting Russell have held "that rental property is *per se* property used in an activity affecting interstate commerce." United States v. Medeiros, 897 F.2d 13, 16 (1st Cir. 1990) (citations omitted); accord Martin, 63 F.3d at 1427; United States v. Parsons, 993 F.2d 38, 40 (4th Cir. 1993); United States v. Patterson, 792 F.2d 531, 534 (5th Cir. 1986). Gaydos' argument, however, is different. She argues that the house on Shadeland could not have been considered rental property because at the time it burned it was vacant, uninhabitable, and she had no intent to rent it

11

again.  As such, Gaydos argues that the house was not being used in an activity affecting interstate commerce at the time of the fire, and therefore the interstate nexus requirement of § 844(i) could not be satisfied.  We agree.

The government argues that a temporary cessation of activity at a business property does not place that property beyond the scope of § 844(i).  Again, we agree.  This argument has been accepted by every Court of Appeals that has addressed the issue.[1]  Moreover, courts in both the Fifth and the Ninth Circuits have held that the destruction of uncompleted commercial buildings by means of fire falls within the coverage of § 844(i).  See Patterson, 792 F.2d at 535-36 (partially completed condominium complex found to affect interstate commerce for purposes of § 844(i) where construction involved out-of-state partners and project was financed by out-of-state lender); United States v. Andrini, 685 F.2d 1094, 1096 (9th Cir. 1982) ("construction of a commercial office building using out-of-state materials is a

---

[1] See Martin, 63 F.3d at 1427 ("property routinely used in interstate-commerce activity does not lose its interstate *use* simply because of a temporary cessation of that activity"); United States v. Ryan, 41 F.3d 361, 364 (8th Cir. 1994) (en banc) (section 844(i) reaches arson for property that satisfies the interstate commerce nexus "even when the property is temporarily closed or vacant"), cert. denied, 115 S.Ct. 1793 (1995); United States v. Turner, 995 F.2d 1357, 1362 (6th Cir. 1993) ("property routinely used in interstate commerce activity does not lose its interstate characteristics because of a temporary cessation of that activity"); Parsons, 993 F.2d at 41 ("vacancy alone does not constitute a removal [of a house] from the rental market"); Medeiros, 897 F.2d at 16 (a "tenant's departure . . . did not necessarily sever the property's ties to interstate commerce for the purposes of § 844(i)").

12

commercial activity affecting interstate commerce for the purpose of § 844(i)").  Collectively, this caselaw suggests that once the business nature of the property at issue is established, courts will presume, absent indicia of an intention to permanently remove the property from the stream of commerce, that the requisite nexus between the property and interstate commerce is satisfied, notwithstanding temporary changes or modifications in the use of the property.

We note that in each of these cases, however, there was a clear intention that the property at issue either remain in, or return to, the stream of commerce.  Indeed, despite the temporary removal of the rental or business properties from the commercial market, the trial records in these cases demonstrate that the particular properties were treated by their owners as if they had never left the stream of commerce.[2]  Moreover, in the two cases

[2] See, e.g., Martin, 63 F.3d at 1428 (owner of property testified that vacancy was only temporary and that he intended to rent the property in the future); Ryan, 41 F.3d at 365 (evidence indicated that building housing failed health center was about to be placed on the commercial market for sale); Turner, 995 F.2d at 1361-62 (evidence and testimony proved that owner had intended to re-let vacant building as soon as repairs and renovations were completed); Medeiros, 897 F.2d at 17 (break in rental activity of fictional building was connected to the planned arson and undercover government agent never indicated to defendant that the property was to be removed from the rental market).  See also United States v. Mayberry, 896 F.2d 1117, 1119 (8th Cir. 1990) (record reflected that temporarily closed sawmill would have been operational had logs been available to cut); United States v. Doby, 872 F.2d 779, 780 (7th Cir. 1989) (per curiam) (owner of vacant property never took it off the rental market and intended to rent upstairs unit after the house was repaired); United States v. Hermes, 847 F.2d 493, 496 (8th Cir. 1988) (per curiam) (owner of the building advertised the space for lease); United States v. Shockley, 741 F.2d 1306, 1307 (11th Cir. 1984) (per

13

involving partially completed commercial buildings, the courts relied on significant connections to out-of-state factors to satisfy the interstate commerce nexus required under § 844(i); factors which are not present in this case.[3]

Here, we do not believe that the trial record could support the conclusion that the house on Shadeland Avenue either remained in, or was intended to return to, the stream of commerce. In reaching this conclusion, we are persuaded by a number of factors. First, the record clearly demonstrates that all tenants had vacated the house. Indeed, the property was unfit for human habitation. It was contaminated by lead, and Gaydos had removed permanent fixtures such as ceiling fans and kitchen cabinets. Second, there is no evidence that Gaydos had any intent to improve the living conditions at the house. She undertook no significant abatement measures to correct the lead problem and expressly stated that she was not going to devote any money to fixing the house. Finally, there was no evidence to refute Gaydos' contention that the house had been permanently removed from the rental market and had no prospect of generating any

---

curiam) (owner of closed restaurant did not remove equipment from the building and told persons that the restaurant would re-open after remodeling and repairs were completed).

[3] See Patterson, 792 F.2d at 536 (involvement of out-of-state partners and lender sufficient to support link between construction of building and interstate commerce); Andrini, 685 F.2d at 1096 (use of out-of-state materials in construction of building is a commercial activity affecting interstate commerce for the purpose of § 844(i)).

future rental revenue.

We conclude that given the confluence of factors in this case, the house on Shadeland Avenue ceased to be a rental property before it was destroyed by fire. Consequently, we conclude that the evidence here was insufficient to establish that the house was involved in an activity affecting interstate commerce at the time of the fire. The status of the house as a rental property was "the interstate hook on which the government hung its argument." Martin, 63 F.3d at 1427. By failing to prove that the house was a rental property, the government has not satisfied the interstate commerce element of the statute. Hence, the requisite nexus between the property and interstate commerce necessary to support a conviction under § 844(i) has not been satisfied and Gaydos' conviction for malicious destruction of property by means of fire will be reversed.

We note that our decision here may be perceived to be in tension with the decision reached by the court in Parsons, which affirmed a jury's finding that a vacant house used as rental property for two to three years before the fire and that, at the time of the arson, was insured as rental property, qualified as "rental property" for purposes of § 844(i). See 993 F.2d at 41. Significantly, the court reasoned that, once the jury concluded that Parsons had commissioned the arson, "it was certainly rational to also conclude that Parsons never intended to move into the house or to remove it from the rental market . . . . the

15

jury concluded that she planned to have the house burned and that [Parson's notice of intent to vacate the property] was merely a cover." Id.

The facts here, unlike those in Parsons, demonstrate that the property at issue was both vacant and uninhabitable at the time of the fire. Moreover, Gaydos expressed a clear intent *not* to take necessary measures to make the house habitable for future tenants. We conclude that a reasonable juror could not have done more than speculate that the house on Shadeland Avenue had a real prospect of generating any future rental revenue.

In sum, we hold that the government could not prove beyond a reasonable doubt that the house on Shadeland Avenue was used in an activity affecting interstate commerce. Consequently, we will reverse Gaydos' conviction for malicious destruction of property by means of fire in violation of 18 U.S.C. § 844(i).[4]

IV.

Gaydos also challenges the restitution order entered by the

---

[4] At sentencing, Gaydos' convictions for mail fraud (Counts 1-4) and for malicious destruction of property by means of fire (Count 6) were grouped together and assigned a base offense level of 24 pursuant to U.S.S.G. § 2K1.4(a)(1)(B) (destruction of a "dwelling" by fire). Gaydos argues that because the house was vacant, uninhabitable, and without prospect of future rental, it was not a "dwelling" within the meaning of § 2K1.4(a)(1)(B). Instead, Gaydos asserts that her base offense level for these Counts should have been 20 pursuant to U.S.S.G. § 2K1.4(a)(2)(B) (destruction of a structure other than a dwelling). We need not reach the merits of Gaydos' contention because our reversal of her conviction on Count 6 requires the district court to readjust its application of the grouping rules and to recalculate Gaydos' sentence.

16

district court.  More specifically, Gaydos alleges that the district court failed to make the required findings of fact that she had the ability to pay before it entered a restitution order against her.  We agree.

In ordering Gaydos to pay $190,139.42 in restitution, the district court relied on a listing of Gaydos' assets contained in the presentence report.  At the sentencing hearing, however, both Gaydos and her counsel raised doubts concerning her ability to pay restitution.  The district court never made specific factual findings with respect to these contentions.  Rather, the court settled the issue by agreeing to a proposal by counsel for the government that, if necessary, the amount of restitution ordered could be remitted at a later date.

We have held that specific findings of fact regarding a defendant's ability to pay are required before a restitution order may be imposed.  See, e.g., United States v. Maurello, 76 F.3d 1304, 1316-18 (3d Cir. 1996); United States v. Copple, 74 F.3d 479, 482-83 (3d Cir. 1996); United States v. Carrara, 49 F.3d 105, 108-09 (3d Cir. 1995); United States v. Turcks, 41 F.3d 893, 901-02 (3d Cir. 1994), cert. denied, 115 S.Ct. 1716 (1995). Deferring such findings until some time *after* a restitution order has already been entered, while perhaps both practical and intuitively correct, does not satisfy this requirement. Accordingly, we will vacate the restitution order entered against Gaydos and remand the matter to the district court for it to make

17

specific factual findings on Gaydos' ability to pay restitution.

                                    V.

Gaydos' final argument is that the district court erred by refusing to reach the merits of her untimely post-trial motions for judgments of acquittal and a new trial.  Federal Rule of Criminal Procedure 29(c) states in pertinent part, "[I]f the jury returns a verdict of guilty . . . a motion for judgment of acquittal may be made . . . within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period."  District courts are without discretion to consider untimely motions for judgment of acquittal under Rule 29(c).  Carlisle v. United States, 116 S. Ct. 1460, 1463-64 (1996).  Since no extension of time was granted, the district court properly determined that it was without jurisdiction to consider the merits of Gaydos' untimely motions for judgment of acquittal.

Similarly, Rule 33 requires that a motion for a new trial be filed "within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period."  We have held that the time limit for filing motions for a new trial under Rule 33 is jurisdictional.  United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987).  A district court is powerless to entertain untimely motions under Rule 33 unless it grants an appropriate extension within seven days after the verdict.  Id. (citations omitted).  Since there was no extension of time, the

18

district court could not consider the merits of Gaydos' untimely motion for a new trial.[5]

## VI.

In summary, we will reverse Gaydos' conviction under 18 U.S.C. § 844(i), vacate her sentence and restitution order, and remand the cause to the district court.

---

[5] Gaydos also contends that the district court erred by failing to hold a factual hearing so that we could rule directly on the merits of her ineffectiveness of counsel claims. We have emphasized our preference that claims of ineffectiveness of counsel be raised in a collateral proceeding under 28 U.S.C. § 2255. See, e.g., United States v. Oliva, 46 F.3d 320, 323 (3d Cir. 1995); United States v. Rieger, 942 F.2d 230, 235-36 (3d Cir. 1991); United States v. Sandini, 888 F.2d 300, 311-12. Thus, although Gaydos' claims of ineffective counsel may be meritorious, they must be raised through a §2255 petition.

19