EDITH H. JONES, Circuit Judge,
Dissenting:
I respectfully dissent from affirming this conviction because it is an abuse of the federal government’s authority to prosecute this local revenge murder. In United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court reminded the courts to police the borders of federalism with new care and due regard for the unique historical primacy of states in local law enforcement. I do not see how a killing of one man by his acquaintance can be a federal offense simply because the killer used a ear bomb and de minimis damage was done to adjacent rental property.
The issue in this case is not Congress’s power to criminalize the act of maliciously damaging or destroying, or attempting to damage or destroy
by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.
18 U.S.C. § 844®. Nor is it an issue here whether an explosion perpetrated on local rent property can be federally prosecuted, because the Supreme Court has held that such rental activity affects commerce. Russell v. United States, 471 U.S. 858, 862, 105 S.Ct. 2455, 2457, 85 L.Ed.2d 829 (1985). While Russell’s conclusion that local rent property “affects commerce” is not as demanding as the Lopez “substantial effects” test, Russell binds us until it is reconsidered by the Supreme Court. See United States v. Rawls, 85 F.3d 240, 242-43 (5th Cir.1996) (observing that, although 18 U.S.C. § 922 would not meet Lopez’s requirements for a sufficient nexus to commerce if the matter were considered res nova, this court was bound by Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 *799 (1977), which dealt with a predecessor to 18 U.S.C. § 922(g)); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484-85, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989) (instructing that when “a precedent of this Court has direct application in a ease, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions”).
Given these premises, however, Lopez still does not permit me to agree that inflicting “by means of fire or explosive” any damage, no matter how trivial or unexpected, on a local rental property is an act that “substantially affects” interstate commerce.[1] Lopez indicated that when, as here, a federal statute contains a jurisdictional element reflecting Congress’s intent to regulate interstate commerce, case-by-ease inquiry remains necessary to maintain the limits on federal power. See Lopez, 514 U.S. at 561-63, 115 S.Ct. at 1631; United States v. Pappadopoulos, 64 F.3d 522, 526 (9th Cir.1995) (holding that Lopez's “substantial effects” analysis must be applied to ensure the constitutionality of a statute that relies on a jurisdictional element in individual eases where the significance of the contacts to interstate commerce is at issue). The substantial effects test articulates the limit.
Admittedly, what constitutes a substantial effect may impose more of a rhetorical than an actual limit on federal authority, as is exemplified by some of the economic regulation cases cited in Lopez.[2] In the criminal area, however, the substantial effects test is meaningful, because criminal law enforcement has traditionally been a state responsibility. Further, the effects of crime are ordinarily wholly local and often non-commercial. If it seems mere rhetoric to confine federal legislation to local activities with a substantial effect on interstate commerce, it is untenable to judicially eliminate either the word “interstate” or “commerce” from the Constitution and “convert congressional Commerce Clause authority to a general police power of the sort held only by the States”. Lopez, 514 U.S. at 549-50, 115 S.Ct. at 1625.
Taking Russell as still-guiding law after Lopez, the application of the substantial effects test to this statute may be easily described: a defendant’s act or attempt at maliciously damaging or destroying, by means of fire or an explosive, property used in interstate commerce must have [or intend] a direct impact on the property’s, ability to be used in that fashion. Thus, intentional or attempted incineration of the property substantially affects interstate commerce.[3] Set *800 ting off a firecracker on the floor of a department store, however, or causing minor damage to property used in interstate commerce as a result of a non-commercial arson on nearby property does not.[4]
The evidence in this case plainly proves a crime that had no connection to interstate commerce and that only accidentally, insubstantially damaged commercial rental property. Appellant Nguyen arranged for a bomb to be placed in Diep’s vehicle, killing Diep and destroying the van, but barely grazing the adjacent apartment complex. The government argued at trial that the privately owned van affected interstate commerce because the victim used it to transport items relating to his job as a maintenance man for the apartment complex. This single connection is too tenuous to support federal jurisdiction. See United States v. Collins, 40 F.3d 95, 99 (5th Cir.1994) (reversing convictions and sentences for violation of 18 U.S.C. § 1921(a) and 18 U.S.C. § 924(c)(1) because theft of a vehicle which prevented the owner from attending a business meeting was “too attenuated to satisfy the interstate commerce requirement”), cert. denied, 514 U.S. 1121, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995). As for the apartment building, there was minor damage to some French doors and to the juncture of the 2x6 planks that formed part of the eaves. There was no structural damage to the building, and it was not closed down for repairs. If this is a federal crime it is hard to conceive of any arson or explosive-related ease that would not be.
The federal' arson/explosive statute expressly seeks to protect property used in commerce. The use of this property had nothing to do with the crime, and the superficial scrapes the building received in no way impaired its position in commerce. Based on a post-Lopez individual inquiry as to whether the defendant’s car-bombing of his acquaintance substantially affected interstate eom-merce, the answer seems to me easy. Broken windows and split eaves do not make a federal case. I respectfully dissent.

. Lopez described three classes of valid legislation under the commerce clause: legislation that regulates "the use of the channels of interstate commerce;" that which regulates or protects "the instrumentalities of interstate commerce, or persons or things in interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;” and that which regulates even local activities that "substantially affect” interstate commerce. Lopez, 514 U.S. at 557-61, 115 S.Ct. at 1629-30. The federal arson statute is among the third class. See Russell, 471 U.S. at 862, 105 S.Ct. at 2457 (discussing the effect on commerce of the local rental of an apartment, and Congress’s power to regulate This activity).

. See, e.g., Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264, 276-280, 101 S.Ct. 2352, 2360-2361, 69 L.Ed.2d 1 (1981) (upholding regulation of intrastate coal mining); Wickardv. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (upholding regulation of production and consumption of home-grown wheat under the Commerce Clause).

.Strictly speaking, the regulated activity under § 844(i) is not simply property affecting commerce, but the arson or destruction of such property. See, e.g., United States v. Gaydos, 108 F.3d 505, 508 (3d Cir.1997) (discussing “Russell's interpretation of § 844(i), and its holding, that the statute constitutionally regulates arson of business property”); United States v. Pappadopoulos, 64 F.3d 522, 526 (9th Cir.1995) ("the conduct regulated by section 844(i) — arson—is not commercial or economic in nature”). After Lopez, courts should consider on a case-by-case inquiry whether this effect on commerce is substantial. See, e.g., United States v. Corona, 108 F.3d 565, 570 (5th Cir.1997) (Congress may constitutionally criminalize "the burning of buildings rented by cab companies for commercial purposes [under § 844(i) ] because those burnings can have a substantial effect on interstate commerce”) (emphasis added); Pappadopoulos, 64 F.3d at 527-28 (the destruction of a privately owned house did not substantially affect interstate commerce, because the house’s sole connection to interstate commerce was a natural gas line).

. This court s recent decision, United States v. Corona, 108 F.3d 565 (5th Cir.1997), should be distinguished. In Corona, the defendants targeted an arguably residential (and non-commercial) house, but the fire spread to a building next door with a sufficient connection to commerce to support a conviction under § 844(i). Unlike the instant case, in Corona the damage to the adjacent structure, a commercially-rented taxicab warehouse and cab employee lounge, was substantial — the roof collapsed, and the building along with one of the taxicabs was destroyed. Id. at 568; United States v. Corona, 934 F.Supp. 740, 741-43 (E.D.La.1996), aff'd, 108 F.3d 565 (5th Cir.1997).