

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-2005

# USA v. Branch

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2160

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Branch" (2005). *2005 Decisions*. Paper 1557.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1557

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2160
_____

UNITED STATES OF AMERICA

v.

TERRANCE BRANCH,

Appellant
_____

Appeal from the United States District Court
For the District of Delaware
D.C. No.: 03-cr-00011
District Judge: Honorable Gregory M. Sleet
_____

Argued: December 13, 2004

Before: NYGAARD, ROSENN, and BECKER, Circuit Judges.

(Filed: January 20, 2005)

David L. Hall (Argued)
Office of United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE 19899
        Counsel for Appellee

Eleni Kousoulis (Argued)
Office of Federal Public Defender
704 King Street
First Federal Plaza, Suite 110
Wilmington, DE 19801
Counsel for Appellant

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

Terrance Branch was convicted of possessing a firearm in violation of 18 U.S.C. § 922(g)(1) in the United States District Court for the District of Delaware. He was tried to a jury and subsequently sentenced to 120 months imprisonment. On appeal, Branch contends that the Government failed to prove that he knowingly possessed the firearm found by his probation officer inside a cabinet in the utility room of his residence. Branch also argues that the district court erred in instructing the jury on joint possession because the evidence that he possessed the firearm was legally insufficient. Lastly, Branch contends that the search of his residence which led to the discovery of the firearm violated his Fourth Amendment rights. We affirm the judgment of conviction.[1]

I.

In November 2002, while serving a six-month term of house confinement pursuant to an aggravated menacing conviction under Delaware law, Branch lived at his grandmother's house. During that time, a confidential informant contacted a detective in the Delaware State Police Department and, describing Branch's residence in accurate detail, informed him that a firearm was hidden in the home's utility room. The detective

_____

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. This Court exercises jurisdiction under 28 U.S.C. § 1291.

forwarded this information to probation officers at the Delaware Department of Correction. Based on this tip, probation officers Reuther and Welch performed an administrative search of Branch's residence. They were accompanied by four back-up law enforcement officers, including Corporal Haggerty.

Branch and his then-girlfriend were present during the search. Haggerty asked Branch "if any weapons were going to be found at the house, and . . . [Branch] stated that the place would be clean." (A-231.) The officers searched the house's three bedrooms, including Branch's, and found no contraband. In a closed cabinet in a utility room located at the opposite end of the house from Branch's bedroom, Welch uncovered an unloaded nine millimeter Intratec 9 pistol. The firearm's serial number was obliterated and it contained no readable fingerprints. The officers made no attempt to check the cabinet for any fingerprints. Approximately five feet away from the cabinet, Welch observed a man's leather jacket. There was no evidence, however, that this jacket belonged to anyone in particular.

Corp. Haggerty placed Branch under arrest, brought him outside to a patrol car, and read him his <u>Miranda</u> rights, which he waived. Haggerty then asked Branch about the firearm. At Branch's trial, Haggerty testified that Branch confessed: "it's mine and I found it . . . [a] while ago." (A-223.) Branch stated "that he did not want to see anyone else get hurt – that's why he took possession of it . . . ." (<u>Id.</u>) Haggerty, however, did not believe Branch. Rather, he believed that the firearm belonged to Branch's cousin,

3

Charles Baynard.[2]  (A-225-26.)  Hoping that Branch would cooperate in a police investigation against Baynard, Haggerty told Branch that he "knew the weapon belonged to Charles Baynard.  And that it was being held there, placed there, stored."  (Id. at 224.)  Branch rejected Haggerty's invitation to aid the police investigation against his cousin.

At Branch's trial, his former girlfriend, Dorlean Thompson, testified that Charles Baynard visited the house nearly every day.  Baynard sometimes slept there, usually when Branch's and Baynard's grandmother was not home.  Thompson believed that Baynard had a key to the house, because he was there when no one else was home.

Within weeks of Branch's arrest, Thompson saw Baynard with a firearm that seemed to be the same size and color as the one found in the utility room cabinet. Once, she saw Baynard pull the gun out from underneath the driver's seat of his car, and bring it over to where Branch was standing outside the house.  Branch and Baynard spoke, but she could not hear what they were saying.  After a few minutes, Baynard returned to the car with the gun. She did not see Branch touch it.  On a second occasion, she and Branch were sitting outside the house when Baynard brought the gun over to them, and asked if Branch "could look at it because [Baynard] had let somebody hold it, and when he got it back, it wouldn't fire."  (Id. at 266.)  Branch did not take the gun, because he "didn't want anything to do with it," and told Baynard to "get that away from here."  (Id.)   On the last

---

[2] According to the Government, Baynard was a cocaine dealer, and the confidential informant reported that Branch was holding cocaine and firearms for Baynard.  The jury, however, never heard any evidence to this effect.

occasion, Thompson was driving Baynard's car, and underneath the driver's seat of his car, she felt something that she perceived to be a firearm wrapped in material.

After a day-long jury trial, Branch was found guilty of being a felon in possession of a firearm, in violation of § 922(g)(1).[3]

## II.

On appeal, Branch argues for the first time that the evidence adduced at trial was insufficient to prove that he knowingly possessed the firearm. Because Branch failed to present this claim to the district court, we are limited to plain error review. United States v. Powell, 113 F.3d 464, 466-67 (3d Cir. 1997) (citing United States v. Gaydos, 108 F.3d 505, 509 (3d Cir. 1997)). To demonstrate plain error, Branch must show that there was an obvious error which affects "substantial rights" and "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)). The affirmation of "a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt 'affect[s] substantial rights,' and seriously impugns 'the fairness, integrity and public reputation of judicial proceedings.'" Gaydos, 108 F.3d at 509 (quoting Olano, 507 U.S. at 732). Thus, we will review the substance of Branch's claim. See id.

---

[3] Branch brought pretrial motions to reveal information about the confidential informant, and to suppress the firearm and his confession to Corp. Haggerty as the fruits of an illegal search. After receiving briefs and holding a hearing on these motions, the district court denied them.

5

When deciding whether a jury verdict rests on legally sufficient evidence, we apply a deferential standard of review. United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). We "view the evidence in the light most favorable to the government, and will sustain the verdict if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996), in turn quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (internal citation omitted).

To support a conviction under § 922(g)(1), the Government must prove beyond a reasonable doubt that: (1) the defendant had been previously convicted of a crime punishable by imprisonment for a term exceeding one year; (2) the defendant knowingly possessed a firearm; and (3) the firearm passed through interstate commerce. See United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000). The parties stipulated to the first and third elements; thus, the Government only had to prove that Branch knowingly possessed the firearm. Possession may be actual or constructive. United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993). Because the firearm was found in a cabinet, not on Branch's person, the Government presented a theory of constructive possession.

"Constructive possession exists if an individual 'knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992) (quoting United States v. Blackston, 940 F.2d 877, 883 (3d Cir. 1991), in

6

turn quoting Black's Law Dictionary 1047 (5th ed. 1979)). Thus, the defendant must know about the object, and must have the intent and ability to exercise "dominion or control" over it. Id. Dominion and control "need not be exclusive but may be shared with others." United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972).

Here, the mere storage of the firearm in a cabinet in the utility room of Branch's residence might be insufficient to prove that he exercised dominion or control over it, particularly in light of the evidence that Baynard enjoyed unfettered and frequent access to the house. See, e.g., Brown, 3 F.3d at 680-83; United States v. Bonham, 477 F.2d 1137, 1138-39 (3d Cir. 1973); Davis, 461 F.2d at 1036. (A-267-68, 282, 289.) Branch's admission, however, was the linchpin in the Government's case against him. He argues that we should disregard his admission, because Corp. Haggerty testified that he did not believe that the firearm belonged to Branch. There is no basis for ignoring Haggerty's testimony on Branch's admission. Unlike Haggerty's recollection of Branch's post-arrest statements, Haggerty's belief that Baynard owned the firearm was not evidence, especially in the face of Branch's admission that it belonged to him.

Whether out of love or fear of his cousin, Branch admitted that he found and took the firearm. Viewing the evidence in the light most favorable to the Government, Branch's admission, coupled with evidence of the firearm's presence in his home, is legally sufficient to support his conviction.

Because there was sufficient evidence that Branch knowingly possessed the

7

firearm, the district court did not abuse its discretion in instructing the jury on joint possession.   Further, we have considered Branch's claim that the probation officers' administrative search of his residence violated his Fourth Amendment rights, and conclude that it lacks merit.  See United States v. Knights, 534 U.S. 112, 122 (2001) ("When an officer has reasonable suspicion that a probationer is subject to a search condition is engaged in criminal activity, . . . an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

## III.

For the foregoing reasons, the judgment of the district court is affirmed.