**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4949**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

    v.

MICHAEL L. WHITE,

               Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Thomas E. Johnston, District Judge. (2:12-cr-00221-1)

Argued: August 20, 2014         Decided: November 17, 2014

Before TRAXLER, Chief Judge, WYNN, Circuit Judge, and George L. RUSSELL, III, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Russell joined. Judge Wynn wrote an opinion dissenting in part.

**ARGUED:** James McCall Cagle, Charleston, West Virginia, for Appellant. Larry Robert Ellis, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** R. Booth Goodwin, II, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

TRAXLER, Chief Judge:

Appellant Michael L. White was charged with crimes related to the intentional burning of a two-unit duplex that he owned and managed and to his recovery of insurance proceeds from the fire. Following a jury trial, White was convicted of conspiracy to commit arson and mail fraud, see 18 U.S.C. §§ 371, 844(i), 1341 (Count 1); aiding and abetting arson, see 18 U.S.C. §§ 2(a), 844(i) (Count 2); and accessory after the fact to arson, see 18 U.S.C. §§ 3, 844(i) (Count 3). The district court imposed a 78-month term of imprisonment for each count, to run concurrently.

On appeal, White raises two challenges to the sufficiency of the evidence. First, White contends that the government failed to establish the nexus to interstate commerce required to sustain arson-related convictions as charged in Counts 1 and 2. Second, he argues the evidence is insufficient to establish that he assisted an uncharged co-conspirator in evading apprehension and punishment as required for the accessory-after-the-fact conviction charged in Count 3. Finally, White challenges his sentence, arguing that the district court used an inflated base offense level as a result of the court's erroneous determination that the duplex qualified as a "dwelling" under United States Sentencing Guidelines Manual ("U.S.S.G.") § 2K1.4(a)(1). We

2

reject each of White's arguments and affirm his convictions and sentence.

                                I.

White was a businessman in Logan County, West Virginia, who owned or held an interest in several local ventures including a helicopter service, an airport management company, and several coal mines. White also owned a two-unit duplex near the town of Van, West Virginia (the "duplex" or "Van duplex"), which he began renting to tenants in 1998.

In the summer of 2009, White was experiencing financial setbacks and defaulted on his helicopter lease, resulting in the closure of his helicopter business and, eventually, the entry of a judgment against him personally for $556,000. White was forced to borrow $40,000 from an acquaintance to cover expenses.

Additionally, White was no longer receiving an income stream from his duplex by the summer of 2009. The Van duplex qualified as government-subsidized housing. For a period of time, the Department of Housing and Urban Development ("HUD") sent subsidized rent payments directly to White on behalf of the last tenants to occupy the Van duplex before the October 2009 fire. Christy Ketcherside Smith ("Ketcherside"), who began living in Apartment 1 in the spring of 2008, testified that she lost her HUD subsidy and was no longer paying rent by early 2009. Shannon Dickens, who resided in Apartment 2 for

                                3

approximately nine years before the fire, also received the benefit of HUD rent subsidies until she found employment and began paying the rent herself. Dickens stopped paying rent in 2008 when her heating and air conditioning unit stopped working and White failed to repair it. Dickens continued to live in the duplex, however, until late September or early October 2009.

White grew increasingly frustrated that his tenants in the Van duplex were not paying rent and that he was not making money on the property. White began expressing this frustration to Kim Kinder, an across-the-street neighbor with whom White was carrying on an affair. Kinder, who also regularly cleaned White's house, gathered from White's many complaints that the property had become "a thorn in his side." J.A. 279.

In June 2009, White purchased a fire-insurance policy to cover the Van duplex "as a two-family tenant-occupied" rental property. J.A. 427. The policy became effective on July 19, 2009, and provided $80,000 coverage for the duplex and $20,000 for its contents. Later that summer, White told Kinder he wanted to talk to her husband "Doug about some kind of proposition as to what he could do with the duplex." J.A. 282. The Kinders met with White who explained that he was not making any money from the duplex and wanted Doug to burn it down as soon as possible. White instructed that no accelerants be used so that the fire would not be "traced back to him," J.A. 283,

4

and that the Kinders not contact him for at least a week after setting the fire. Finally, White offered Doug, an unemployed ex-convict, $4000 to do the job. White paid the Kinders $200 up front as a show of "good faith," J.A. 284, and indicated the balance would be paid upon completion of the job.

During the meeting, White told the Kinders that he had already evicted both tenants and that, as far as he knew, the tenants were gone. This was not entirely true, however. White did not even begin eviction proceedings until September 11, 2009. There was no evidence that White ever obtained service on Ketcherside, the tenant in Apartment 1. In fact, Ketcherside testified that she was never served with any eviction papers. Thus, before the fire, White had not obtained an order of eviction against Ketcherside. Although Ketcherside had not been sleeping in the Van duplex for several months, she had not completely abandoned the premises—she still kept her furniture and her children's clothing and toys in the duplex and periodically went there to retrieve items and check on things. White was able to obtain an eviction order against Dickens, his Apartment 2 tenant, directing that she vacate the premises by October 15, 2009—the day before the fire.[1]

---

[1] Dickens testified that she vacated her unit a few weeks before the eviction deadline.

The Kinders made three separate trips to the duplex before setting the fire. On the first two trips, the Kinders decided to wait when they noticed that the lights were on in the duplex and that people were in the building. On October 16, 2009, Kinder and her husband finally found the duplex without occupants, although the lights were on and there were "a lot of clothes on the floor." J.A. 287. Kinder waited in the car while her husband entered the duplex and started a fire using a small amount of gasoline. The Kinders returned home once the fire had been set.

The heat and smoke damage to the Van duplex caused by the fire exceeded the limits of White's new fire policy. Thus, White recovered the full $80,000 proceeds on his claim, plus an additional amount for major appliances. As promised, the Kinders waited one week before contacting White, who then gave Doug $1000. White refused to make any further large payments, claiming that he received very little insurance money because the Kinders did not cause sufficient damage to the duplex. In response, the Kinders resorted to "begging and threatening" to contact the police, which prompted White to make a number of smaller payments of $100 or less. In all, White paid about $2000 rather than the $4000 he had promised.

In June 2010, Kinder was contacted by West Virginia State Police Officer T.C. Bledsoe. After initially denying

6

involvement in the arson, Kinder confessed to her involvement in the Van duplex arson and agreed to cooperate with the police. Officer Bledsoe arranged for Kinder to make a recorded telephone call to White in which they discussed the fire and White's payment of money to the Kinders. During the call, Kinder made statements suggesting White's involvement in the arson to which White did not deny. Kinder also asked if White intended to give her more money, and White indicated that Kinder had been threatening him.

Officer Bledsoe subsequently interviewed White. During the interview, White acknowledged his relationship with Kinder, his frustration over his ownership of the duplex, and the fact that a fire had occurred. White then told Officer Bledsoe that Kinder confessed to having started the fire about two months after the duplex burned. White further stated that before the fire he had asked Doug Kinder to go to the duplex "and clean it up and get it prepared to either rent or sell." J.A. 586.

White testified in his own defense at trial. He denied knowledge of or involvement in the burning of his duplex. To the extent that the recorded phone call made it appear that White was "fully aboard with the idea that [the duplex] would be burned and burned by [Kinder]," White explained that he was simply "playing along" at the request of a mutual friend, Mark Vincent, who told him not to argue with Kinder because she was

7

suicidal.  J.A. 508.  Vincent testified and confirmed this claim.  White was convicted on all three counts, and the district court imposed concurrent 78-month terms of imprisonment on each count.  White now appeals.

## II.

White first argues that there was insufficient evidence to establish the interstate commerce element of the crime of arson under 18 U.S.C. § 844(i).  Accordingly, he argues that the district court was in error when it denied the motion for judgment of acquittal.  We disagree.[2]

We review de novo the district court's denial of a motion for judgment of acquittal.  See United States v. Hamilton, 699 F.3d 356, 361 (4th Cir. 2012).  In considering a defendant's argument that the evidence was insufficient to support his

---

[2] To the extent that White frames the issue in terms of federal subject matter jurisdiction, he misunderstands the jurisdiction of the federal courts.  As we have explained, "the jurisdictional element is merely one element of the criminal activity proscribed by § 844(i), and whether it is demonstrated in an individual circumstance does not affect a court's constitutional or statutory power to adjudicate a case." United States v. Carr, 271 F.3d 172, 178 (4th Cir. 2001) (internal quotation marks omitted).  A claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is therefore considered a sufficiency of the evidence claim.  See id.; see also United States v. Williams, 299 F.3d 250, 253 (3d Cir. 2002) ("A property's use in an activity affecting interstate commerce is an essential element of the crime of arson under 18 U.S.C. § 844(i)" which, "[l]ike all elements of criminal offenses, the Government must prove . . . beyond a reasonable doubt.").

8

convictions, we will uphold a jury's verdict "if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the conviction." Id. (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010) (internal quotation marks omitted). Thus, "the jury's verdict must stand unless we determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Royal, 731 F.3d 333, 337 (4th Cir. 2013).

Under 18 U.S.C. § 844(i), it is unlawful to "maliciously damage[ ] or destroy[ ], or attempt[ ] to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." It is beyond dispute that the rental of real estate is an "activity that affects commerce" under § 844(i). Russell v. United States, 471 U.S. 858, 862 (1985) (internal quotation marks omitted). In Russell, the Supreme Court held that the arson of a two-unit apartment building that was used as rental property fell within the purview of 18 U.S.C. § 844(i). In so holding, the Court noted that, although § 844(i) "only applies

9

to property that is 'used' in an 'activity' that affects commerce," "[t]he rental of real estate is unquestionably such an activity." Id. Because the apartments in the building were rented to tenants at the time of the fire, the Court concluded that the property was "being used in an activity affecting commerce." Id. Accordingly, White does not, and cannot, challenge the general proposition that the rental of the Van duplex was an activity affecting commerce under § 844(i). See United States v. Medeiros, 897 F.2d 13, 16 (1st Cir. 1990) ("Russell thus holds that rental property is per se property used in an activity affecting interstate commerce.")

White's appeal, however, presents an issue not directly addressed by Russell—whether a rental house can still be used in an activity affecting commerce under § 844(i) if the tenants vacated before the fire was set. This court has previously answered this question in the affirmative. See United States v. Parsons, 993 F.2d 38 (4th Cir. 1993). In Parsons, we concluded that a house used as rental property for two or three years qualified as real property "used in an activity that affects interstate commerce" under § 844(i) even though it had been vacant for two months at the time of the fire. See id. at 40. Rejecting the idea that "vacancy alone . . . constitute[s] a 'removal' from the rental market," id. at 41, we determined that there was sufficient evidence to support the conclusion that the

10

house was rental property at the time of the fire because (1) the house was insured as rental property at the time of the fire, and (2) having found that the defendant commissioned the fire, the jury could also have reasonably inferred that the defendant never intended to take the house off the rental market. See id.

Applying Parsons to the case before us, we conclude that there is sufficient evidence in the record to support the conclusion that, at the time of the fire, the Van duplex was being "used in interstate . . . commerce or in [an] activity affecting interstate . . . commerce." 18 U.S.C. § 844(i). Significantly, the Van duplex had been used as a rental property for more than ten years at the time of the fire. The fact that both tenants were no longer living in the duplex at the moment the fire was set, of course, does not compel the conclusion that it had been removed from the rental market. See Parsons, 993 F.2d at 41. It is not even clear that White's Apartment 1 tenant, Christy Ketcherside, actually vacated the duplex. Although she was living and sleeping elsewhere, Ketcherside still kept furniture and children's clothing and toys there and periodically checked on her property. Those items were burned in the fire. And although White apparently filed an eviction action against Ketcherside, he never served her with process—thus, there is no indication Ketcherside was obligated to vacate

11

and could not have resumed living in the duplex at the time of the fire. White did obtain an order evicting Dickens from Apartment 2 but permitting her to remain there until the day before the fire—October 15. A reasonable finder of fact could conclude on this evidence that Ketcherside still had a right to occupy the premises at the time of the fire and that Dickens technically had the right to do so up until the day before the fire. Second, as in Parsons, the Van duplex was insured as a commercial rental property at the time of the fire, and White claimed and recovered the limits of the policy after the fire. This is strong evidence that the duplex functioned as a commercial property. Indeed, "once the business nature of the property at issue is established, courts will presume, absent indicia of an intention to permanently remove the property from the stream of commerce, that the requisite interstate commerce nexus exists." Williams, 299 F.3d at 256 (internal quotation marks and alterations omitted). The record is devoid of any indication that White intended to remove the duplex from the rental market. To the contrary, White told Officer Bledsoe that prior to the fire he had asked Doug Kinder to clean the duplex so that White could rent it to tenants again or sell it. Additionally, in light of the overwhelming evidence that White commissioned the arson, the jury could reasonably infer that White had no intention whatsoever to take the duplex off the

12

market but instead wished to collect the insurance proceeds while it was still considered a rental property under the terms of the insurance policy. See Parsons, 993 F.2d at 41.[3]

White contends that Parsons is no longer good law after Jones v. United States, 529 U.S. 848 (2000). We disagree. In Jones, the Supreme Court held that § 844(i) does not apply to a private, owner-occupied residence that is being used only "for everyday family living" rather than a commercial purpose. Id. at 859. The Court rejected the argument that the residence fell within the scope of § 844(i) because it was being "used" to secure a mortgage loan from an out-of-state banker, to obtain an insurance policy issued by an out-of-state carrier, and to receive natural gas from out-of-state suppliers. See id. at 855-56. The Court explained that the term "used" in § 844(i) "mean[s] active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." Id. at 855. Seizing on the Court's use of the word "past," White argues that Jones requires the government to prove that the property is being rented by a tenant at the very moment the fire is set, i.e., that it is presently being used in commerce. According to White, the moment Dickens vacated the Van duplex,

---

[3] It would be a perverse result indeed if White could "remove" the duplex from the market by planning and directing the arson of the duplex, thereby defeating the interstate nexus requirement.

13

the landlord-tenant relationship ceased to exist. There being no evidence that he sought to continue renting the premises to new tenants at the time of the fire, White argues the only possible conclusion from the evidence is that the Van duplex was no longer being "used in" an activity affecting interstate commerce under § 844(i) when the Kinders burned it.

Jones is not inconsistent with Parsons. The Court's primary focus in Jones was the nature of the use or function of the building for purposes of § 844(i). In Jones, the Supreme Court emphasized the "qualifying words 'used in,'" which mandate that "the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." Id. at 854. Jones gives us a two-part outline for assessing the applicability of 18 U.S.C. § 844(i), which requires an analysis of the "function of the building itself, and then a determination of whether that function affects interstate commerce." Id. at 854 (emphasis added). Adhering to this framework, the Court concluded that the burning of an private family residence not being actively used for commercial purposes fell outside of the scope of § 844(i).

Parsons is not inconsistent with the two-part Jones analysis. As we have explained, the evidence is sufficient to permit the conclusion that the Van duplex was functioning as a two-unit rental apartment at the time of the fire. There is

14

simply no evidence suggesting that the function of the duplex changed before the fire.  Thus, viewing the evidence in the light most favorable to the government, we conclude there is substantial evidence in the record to support the verdict.[4]

### III.

White next challenges the district court's denial of his Rule 29 motion for judgment of acquittal challenging the sufficiency of the evidence to support a conviction for accessory after the fact to arson charged in Count 3.  In order to prove accessory after the fact under 18 U.S.C. § 3, the government must demonstrate "(1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender." United States v. De La Rosa, 171 F.3d 215, 221 (5th Cir. 1999). The government charged that White violated 18 U.S.C. § 3 when he knowingly made a false and misleading statement to an insurance

---

[4] We note White makes a related argument—which he does not raise separately but includes as part of his challenge to the government's proof of the interstate commerce element—that the district court's jury instructions contravene Jones.  For the same reasons we reject White's sufficiency of the evidence argument based on Jones, we find no reversible error in the district court's instructions which, "taken as a whole, adequately state the controlling law." United States v. Ryan-Webster, 353 F.3d 353, 364 n.17 (4th Cir. 2003) (internal quotation marks omitted).  Moreover, in light of the overwhelming evidence against White, any error in the district court's instructions would have been harmless.

15

representative for the purpose of helping Kinder—and ultimately himself—avoid apprehension.

At trial, the government presented the testimony of two Nationwide Insurance representatives who interviewed White. First, Charles Adkins, who was assigned by Nationwide to assess White's insurance claim based on the Van duplex fire, testified that in an October 2009 interview a few days after the fire, White suggested that one of the tenants may have started the fire in response to White's efforts to evict them. Adkins indicated that he notified Nationwide's Special Investigation Unit ("SIU") about White's statement that tenants may have intentionally started the fire and that the SIU's function was to follow up with law enforcement officials. White's false statement to Adkins was charged in Count 1 as an overt act in furtherance of the arson conspiracy. Second, Stephen Thompson, a Nationwide Insurance Special Claims Representative, testified that he conducted a recorded interview of White in February 2010, about four months after the fire. White essentially repeated to Thompson the statement he previously made to Adkins speculating that a tenant may have set the fire, and White omitted any mention of the Kinders.[5] Like Adkins, Thompson

---

[5] Thompson was sent to interview White about a separate claim made by White under a Nationwide fire insurance policy for another fire—one that damaged White's personal residence on (Continued)

16

testified that had White told him of the Kinders' involvement, he would have notified the SIU for follow up with law enforcement. White's statement to Thompson was charged in Count 3—the accessory-after-the-fact charge.

White renews the argument that he made throughout trial that this evidence was insufficient to prove that he acted with the intent to assist Kinder in avoiding apprehension. White contends that his statement to Thompson was nothing more than a "passing comment" to an insurance representative who was not connected to law enforcement and had not indicated to White any such connection existed. Thus, White concludes that there is nothing in evidence showing that he was aware any statement he made incriminating Kinder would be passed along to the police. The district court rejected White's argument, pointing out that in light of the evidence that Kinder committed arson at White's behest for the Nationwide insurance money, the jury could easily infer that White was aware that preventing Kinder's apprehension was in his personal best interest and that his interview statement in fact did aid Kinder because Thompson would have

February 14, 2010. During the interview, Thompson inquired about White's previous fire-loss claims and the subject of the Van duplex fire arose. White successfully moved in limine to exclude any evidence of this February 2010 fire. Thus, the jury was unaware of the purpose of Thompson's interview and heard a redacted recording of the interview.

17

reported the matter to the Nationwide SIU. We agree with the district court.

The dispute concerns only the third element of an accessory-after-the-fact charge—whether the government offered proof that White assisted Kinder for the purpose of "prevent[ing] [her] apprehension, trial, or punishment." De La Rosa, 171 F.3d at 221. White does not dispute that there was substantial evidence that Kinder participated in the commission of the Van duplex arson and that White was aware of this offense because he had commissioned the Kinders to commit it. White argues there is no evidence of the requisite intent to assist, however, because he made his statement to an insurance agent, not a law enforcement agent. We disagree. Here, all the evidence must show is that he acted "in order to prevent the apprehension" of Kinder. Id. Based on the evidence, the jury could make a couple of obvious common-sense inferences. First, the jury could infer that White was well aware that helping Kinder avoid detection and arrest was in his personal best interest—as subsequently demonstrated by Kinder's trial testimony incriminating White. Second, in light of the evidence that both law enforcement and the insurance company were interested in the origin of the fire and that common sense would tell a person that an insurance adjuster who found that a fire claim was really arson would turn that information over to law

18

enforcement, it is a reasonable inference that White understood it was to his benefit in avoiding apprehension to cast suspicion on the tenants. Indeed, in view of these facts, the only logical purpose for White to attempt misdirection in his interview with Thompson was to ensure against even the very possibility that Kinder and then White himself would fall under police scrutiny.

Viewing the evidence in the light most favorable to the government, we are satisfied that "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Cone, 714 F.3d 197, 212 (4th Cir. 2013). We conclude that White has not carried the "heavy burden" that accompanies a sufficiency of the evidence challenge, United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007), and we therefore affirm the district court's denial of the motion for a judgment of acquittal on Count 3.[6]

---

[6] After oral argument, the panel directed the parties to submit supplemental briefs on whether it is permissible for White to be convicted and sentenced for accessory after the fact to an arson offense that he himself committed as a principal. See United States v. Taylor, 322 F.3d 1209, 1212 (9th Cir. 2003) (finding evidence sufficient to show violation of the "plain language" of 18 U.S.C. § 3, but concluding that § 3 was inapplicable given that defendant "was found guilty as a principal to the crime"); see also State v. Jewell, 409 S.E.2d 757, 764 (N.C. App. 1991) (Wynn, J., dissenting) ("It stands to reason that . . . a principal felon cannot be an accessory after the fact to himself. . . ."). But see United States v. Triplett, 922 F.2d 1174, 1180 (5th Cir. 1991). Although White (Continued)

19

White's final contention is that the district court incorrectly concluded that the Van duplex, for sentencing purposes, was a "dwelling" under U.S.S.G. § 2K1.4, the relevant sentencing provision for arson-related offenses. Under § 2K1.4, if the Van duplex is classified as a "dwelling," the base offense level is 24, see U.S.S.G. § 2K1.4(a)(1)(B), but if the duplex is categorized as "a structure other than . . . a dwelling," the base level offense is 20, see U.S.S.G. § 2K1.4(a)(2)(B). White argues that the Van duplex was no longer a "dwelling" at the time of the fire because it was vacant. This alleged error, White contends, resulted in an advisory sentencing range of 51 to 63 months rather than the 33-to-41-months range that would have applied if the district court had not determined that the Van duplex was a "dwelling" under the guideline.

In considering a sentencing court's application of the guidelines, we review "legal conclusions de novo and . . . factual findings for clear error." United States v. Layton, 564

_____

was guilty of aiding and abetting, an aider and abettor is considered a principal. See Tarkington v. United States, 194 F.2d 63, 68 (4th Cir. 1952). Having had the benefit of the parties' input on this issue, which was raised neither in district court nor on appeal, we are satisfied that reversal is not warranted under the plain error standard of review. We take no position on whether any error occurred in the first place.

F.3d 330, 334 (4th Cir. 2009). The term "dwelling" is not defined in U.S.S.G. § 2K1.4 or the accompanying commentary. We accord undefined guideline terms their "ordinary, contemporary meaning." United States v. Chacon, 533 F.3d 250, 257 (4th Cir. 2008). In ordinary terms, a "dwelling" is a "house or other structure in which a person or persons live," including "the apartment or building . . . occupied by a family as a place of residence." Black's Law Dictionary 505 (6th ed. 1990); see United States v. Smith, 354 F.3d 390, 397-98 (5th Cir. 2003) (employing the Black's Law Dictionary definition of "dwelling" for purposes of U.S.S.G. § 2K1.4); see also United States v. Ramirez, 708 F.3d 295, 302-03 (1st Cir. 2013) (using Black's to define "dwelling" for purposes of U.S.S.G. § 4B1.2); United States v. McClenton, 53 F.3d 584, 587 (3d Cir. 1995) (same). The Van duplex clearly fell within the scope of the foregoing definition and functioned as a "dwelling" for more than 10 years before it burned down. White does not suggest otherwise. Instead, he argues that the duplex lost its character as a dwelling once the tenants vacated the premises. See United States v. Jackson, 22 F.3d 583, 585 (5th Cir. 1994). He likens his circumstances to those presented in Jackson, wherein the Fifth Circuit determined that the defendant did not burglarize a "dwelling" for purposes of U.S.S.G. § 4B1.2(1) by breaking into a vacant house. Jackson rejected "the government's argument

21

that the nature of the dwelling did not change by virtue of the seven year vacancy" and noted that "whether by vacancy, physical deterioration, altered use, or otherwise, a point in time exists at which a dwelling loses its character as a residence and becomes a 'mere' building." Id. (emphasis added).

Nothing of the kind occurred here, however, as the Van duplex was vacant at most for a couple of weeks before the fire was set. There was absolutely no indication that the duplex had ever functioned or would ever function as anything other than a dwelling. As the Fifth Circuit observed in concluding that a three-month seasonal vacancy period did not remove a motel from "dwelling" status under § 2K1.4,

> [t]here is . . . a marked difference between the seven-year abandonment of the building in Jackson and the three-month seasonal vacancy of the motel. Whatever the "point in time" at which a building's core nature is altered, it was not reached in just three months, particularly in light of the fact that the motel would again be occupied by visitors in the near future.

Smith, 354 F.3d at 398. We are likewise confident the brief period during which the Van duplex was completely empty of tenants did not cause it to lose its essential character as a dwelling, especially since, as previously mentioned, one of the tenants was under no order of eviction and continued to maintain personal property in her unit at the time of the fire. The duplex, which still had power and was in a habitable condition,

22

clearly had not been abandoned to the point that it could no longer be considered a "dwelling." See United States v. Ingles, 445 F.3d 830, 840 (5th Cir. 2006) (concluding that "a camp house" that had been vacant for several months at the time of the fire was still a "dwelling" under § 2K1.4 "in light of the fact that at the time of the fire the structure was furnished as a functioning residence"). We reject White's argument and conclude that the district court did not clearly err in concluding the Van duplex was a "dwelling" within the meaning of U.S.S.G. § 2K1.4.[7]

V.

For the foregoing reasons, we affirm White's convictions and sentence in full.

AFFIRMED

---

[7] White's Sixth Amendment challenge to the district court's application of a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 is clearly foreclosed by circuit precedent. See, e.g., United States v. Blauvelt, 638 F.3d 281, 293 (4th Cir. 2011); United States v. Grubbs, 585 F.3d 793, 799 (4th Cir. 2009); United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008). Accordingly, we reject this claim.

WYNN, Circuit Judge, dissenting in part:

A person should not be held criminally liable both as a principal and as an accessory after the fact to himself. Here, Defendant was convicted of aiding and abetting arson, which the law does not distinguish from principal liability for the arson. Because I would hold that Defendant cannot also be convicted of being an accessory after the fact for the same arson, I respectfully dissent.

I.

"[P]rovisions of the Federal Criminal Code" make plain that not only "'whoever commits an offense'" but also whoever "'aids, abets, counsels, commands, induces, or procures its commission, is a principal.'" Tarkington v. United States, 194 F.2d 63, 68 (4th Cir. 1952) (quoting 18 U.S.C. § 2). In other words, "[t]he distinction between principals and accessories before the fact has been abolished." Id.

In this case, a jury convicted Defendant of aiding and abetting arson. Defendant is, therefore, criminally liable as a principal for the arson, i.e., as someone who "commit[ted] [the] offense." Id. (internal quotation marks and citation omitted)

Defendant was also charged with and convicted of being an accessory after the fact. Specifically, per 18 U.S.C. § 3, "[w]hoever, knowing that an offense against the United States

has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."

In this case, Defendant misrepresented to an insurance agent that one of his tenants may have committed the arson in an attempt "to ensure against even the very possibility that Kinder and then White himself would fall under police scrutiny." Ante at 19.

In my view, the law does not allow Defendant to be responsible as a principal for the arson and for assisting himself after the fact. As the Ninth Circuit has explained, a defendant "should not be punished as an accessory after the fact, even though he assisted in preventing his own apprehension and the apprehension of his co-offender." United States v. Taylor, 322 F.3d 1209, 1212 (9th Cir. 2003). This is because "[u]nder 18 U.S.C. § 3, the offense of accessory after the fact only occurs when a person assists an offender; the person committing accessory after the fact is not the 'offender' himself. To interpret § 3 otherwise would lead to the absurd result of subjecting every principal to an accessory after the fact charge." Id.; see also State v. Jewell, 409 S.E.2d 757, 764 (N.C. App. 1991) (Wynn, J., dissenting in part) ("A participant in a felony may no more be an accessory after the fact than one who commits larceny may be guilty of receiving the

25

goods which he himself had stolen. . . . It follows that since an aider and abettor to a felony is treated the same as the principal that committed the felony offense, he too cannot be an accessory after the fact to that same offense." (internal quotation marks and citation omitted)).

Such reasoning is supported by the fact that 18 U.S.C. § 3 is "based upon" Skelly v. United States, 76 F.2d 483 (10th Cir. 1935).  2 Fed. Jury Prac. & Instr. § 22:02 (6th ed. 2014); see also 18 U.S.C. § 3 (West ann.) Revision Notes & Leg. Reports (same).  In Skelly, the Tenth Circuit defined an accessory as "he who is not the chief in the offense, nor present at its performance, but is some way concerned therein, either before or after the fact committed" and as "one who participates in a felony too remotely to be deemed to principal."  76 F.2d at 487 (internal quotation marks and citations omitted).  It defined "accessory after the fact" as "one who, knowing a felony to have been committed by another, receives, relieves, comforts, or assists the felon in order to hinder the felon's apprehension, trial, or punishment."  Id.

I appreciate that Defendant failed to preserve this issue and that we view it only through the plain error lens.  That limits us to correcting those errors that are "plain" and that "affect substantial rights."  United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks and citation omitted).

26

Further, we generally refrain from intervening where the error does not seriously impact the fairness and integrity of the proceedings. Id.

While plain error is a high hurdle, I nevertheless conclude that Defendant clears it here. First, as a matter of law, Defendant cannot be a principal offender and an accessory after the fact to himself. Therefore Defendant's accessory after the fact conviction constitutes clear legal error.[*]

As for whether the error affected Defendant's substantial rights, "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. Here, without question, it did. If the law had been applied correctly in this case, Defendant could not have been convicted both as a principal participant in the arson and as an accessory after the fact. In other words, the clear legal error directly affected the outcome of the district court proceedings.

In sum, I conclude that, as a matter of law, a defendant cannot be convicted as a principal offender and as an accessory

---

[*] The majority opinion cites United States v. Triplett, 922 F.2d 1174 (5th Cir. 1991), as going the other way on this issue. While the Fifth Circuit undoubtedly allowed convictions for both principal and accessory-after-the-fact liability to stand, its opinion failed to acknowledge, let alone analyze, the conundrum of allowing a principal to be convicted of acting as an accessory after the fact to himself.

27

after the fact. Nevertheless, Defendant here was convicted of both. That constituted clear and prejudicial error that, in my view, seriously detracts from the fairness of the proceedings. Olano, 507 U.S. at 732. Accordingly, I would vacate Defendant's accessory after the fact conviction and therefore respectfully dissent.