WYNN, Circuit Judge,
dissenting:
Kim Kinder and Michael White conspired to commit arson. Kinder cooperated with the government, and the government, in turn, charged Kinder with only one arson-related offense, to which she pled guilty. The government then agreed to argue for a reduced sentence for Kinder.
At her plea hearing, Kinder testified at length and in detail about her mental health diagnoses, hospitalizations, and treatments. Kinder’s testimony went well above and beyond what the district court asked. And not once during her testimony did Kinder, or her counsel on her behalf, raise the issue of privilege.
Ultimately, Kinder served as the star witness in the government’s case against White, who was charged with several arson-related offenses. As part of his defense, White sought Kinder’s mental health records from hospitalizations he learned about at Kinder’s plea hearing in open court. Yet, unlike in her own proceeding, in White’s criminal proceeding, Kinder asserted the psychotherapist-patient privilege in an attempt to block White’s counsel from gaining access to records related directly to her plea hearing testimony.
By liberally discussing her mental health issues in her extensive open-court testimony in her own proceeding, Kinder waived her psychotherapist-patient privilege as to the limited and directly-related records that the district court released in White’s case. Accordingly, because I agree with the district court’s grant of White’s motion for early production of records, I respectfully dissent.
I.
White, a West Virginia businessman, owned a two-unit duplex near Van, West *134 Virginia. In 2009, White experienced financial difficulties. Among them, White was no longer receiving income from his duplex: His tenants no longer paid their rent.
White “express[ed] this frustration to Kim Kinder, an across-the-street neighbor with whom White was carrying on an affair.” United States v. White, 771 F.3d 225, 228 (4th Cir.2014). “White purchased a fire-insurance policy” that “provided $80,000 coverage for the duplex and $20,000 for its contents.” Id. He then asked Kinder and her husband “to burn it down as soon as possible.” Id. White gave the Kinders some money and told them that he had evicted the tenants. On October 16, 2009, after a couple of trips to the duplex, the Kinders set it on fire.
White recovered the full proceeds on the insurance policy he had taken on the duplex, plus an additional 'amount for major appliances. And he ultimately paid about $2000 to the Kinders.
In June 2010, West Virginia police contacted Kinder. After initially denying involvement in the arson, Kinder confessed and agreed to cooperate with the authorities. Kinder made “a recorded telephone call to White in which they discussed the fire and White’s payment of money to the Kinders. During the call, Kinder made statements suggesting White’s involvement in the arson which White did not deny.” Id.
Kinder ultimately pled guilty to one count of conspiracy to commit arson in violation of 18 U.S.C. § 844(i). The government, in turn, “agree[d] to file a motion in Ms. Kinder’s case requesting the Court reduce her sentence based on the substantial assistance she has already provided in the criminal investigation and prosecution of another.” Plea Agreement at 4, United States v. Kinder, No. 2:12-cr-00114 (S.D.W.Va. Mar. 5, 2012).
During her initial plea hearing, Kinder told the district court that she took numerous medications, including anti-depressants, anti-anxiety drugs, and muscle relaxers. Kinder also revealed that she had been diagnosed with bipolar disorder and schizophrenia. She did not know, however, which drugs treated which conditions because her treatment providers “never told [her] that this is what I am prescribing you for schizophrenia.” Tr. of Plea Hr’g at 12, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. June 19, 2012).
Kinder detailed her extensive psychiatric issues and treatments well beyond what would have been necessary simply to answer the district court’s questions. She explained, for example, that “it was just— just pretty much the way my life has went for the past 26 years, is in and out of hospitals and emergency rooms and what — because I didn’t know, they couldn’t tell me what was wrong with me. I was having panic attacks and they were telling me I just had a little anxiety and send me home....” Id. at 11. Kinder also reported that she had repeatedly attempted suicide.
Kinder detailed her voluntary and involuntary admissions to the “psych wards” of four different hospitals, the most recent admission occurring only about a year before the plea hearing. Id. at 7. She identified those hospitals as Logan Regional Hospital, St. Mary’s Hospital, Thomas Memorial Hospital, and Highland Hospital. And she identified at least one of her treating physicians by name — Dr. Fink at St. Mary’s. Kinder also shared, for .example, that she felt her doctors did not “really care[ ] enough to sit down and find out what was going on and most ... would just, you know, write me more drugs and send me home.” Id. at 13.
Not once during any of this did Kinder *135 express privilege concerns.[1] At no point during her extensive testimony did either Kinder or her counsel, for example, seek a side bar or otherwise raise the specter of the psychotherapist-patient privilege. And “counsel for [White] was present in the public gallery during the proceeding to hear this entire discussion.” J.A. 97-98.
Based on the information revealed by Kinder during her plea hearing, White filed a motion for early production of records in his own criminal proceeding. He sought Kinder’s treatment records from each of the four hospitals Kinder identified at her plea hearing.
The government opposed White’s motion, arguing that Kinder’s records were protected from disclosure by the psychotherapist-patient privilege recognized in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Kinder then intervened and also objected to the motion.
Initially, the district court found “that the requested documents [were] sufficiently relevant ... to warrant in camera review.” J.A. 91. The district court therefore entered a preliminary order directing each of the four hospitals to produce Kinder’s records solely to the court.
After conducting its review, the district court determined that to the extent the hospital records revealed communications from Kinder to, or diagnoses from, her psychiatrists, they fell within the scope of the psychotherapist-patient privilege. Nevertheless, observing that the psychotherapist-patient privilege recognized in Jaffee is not absolute, the district court concluded that the privilege “contemplates an exception where necessary to vindicate a criminal defendant’s constitutional rights.” J.A. 119.
The district court found such an exception warranted in this case, concluding that White should obtain Kinder’s records under the Due Process Clause. The district court saw the matter as the “perfect storm of facts” justifying an exception — including Kinder’s role as a co-conspirator, Kinder’s self-interest in assisting the government (in the hope of reducing her own sentence), the importance of Kinder’s testimony and credibility to the government’s case against White, and Kinder’s admission to various mental health diagnoses “that potentially implicate her ability to accurately perceive, process, and relate information.” J.A. 123. Accordingly, the district court granted White’s motion for early production of records and ordered limited disclosure.
At his trial,[2] White used the disclosed records to cross-examine Kinder. But the district court ruled that the records could not be introduced into evidence. Ultimately, the jury convicted White on several arson-related counts, and the district court sentenced him to concurrent 78-month terms of imprisonment on each count. White, 771 F.3d at 228-29. White appealed, and his case has been resolved. Id. Only Kinder’s appeal of the district court’s records-related ruling is before us now.
II.
Kinder argues that in deciding whether her mental health records were protected *136 from disclosure by the psychotherapist-patient privilege, the district court engaged in the type of balancing analysis the Supreme Court expressly rejected in Jaf-fee. White counters that the district court properly applied the distinguishable Jaffee, that the district court could have deemed the privilege waived by Kinder’s discussing her mental health treatment in open court, and that the district court also could have found that the records it released fell outside of any privilege.
On appeal, “[w]e review factual findings underlying an attorney-client privilege ruling for clear error, and we review the application of legal principles de novo.” In re Grand Jury Subpoena, 341 F.3d 331, 334 (4th Cir.2003). Upon careful consideration, I must agree with White: Kinder waived her privilege in the subject matter of the released records.
A.
As an initial matter, I do not believe that waiver precludes us from reaching the privilege-waiver issue. I “certainly agree” that White “did not ‘pellucidly articulate this theory’, below.” Quicken Loans Inc. v. Alig, 737 F.3d 960, 964-65 (4th Cir.2013) (quoting Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 245 n. 2, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000)). Nevertheless, while White did not call his argument below waiver, it had the stuff of waiver — so much so that opposing counsel recognized it as such and railed against it. J.A. 65 (stating that White’s counsel argued “that in as much as Ms. Kinder has spoken about some of her history in court ... there may be some — a waiver or some way to think that there is no — there in no expectation of privacy here” and arguing against the same). Further, on appeal, White contends that “the District Court could have properly found that Ms. Kinder had waived any privilege she might have had in these records by talking about her hospitalizations ... in open court, thus she had no reasonable expectation of privacy after that point.” Appellee’s Br. at 11.
Moreover, “ ‘we review judgments, not opinions’ and, consequently, we are ‘entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below.’” Everett v. Pitt Cnty. Bd. of Educ., 678 F.3d 281, 291 (4th Cir.2012) (quoting Crosby v. City of Gastonia, 635 F.3d 634, 643 n. 10 (4th Cir.2011)). Here, the district court’s judgment granted White’s motion for early production of records. Though I would grant the motion on a different basis than that of the district court, the judgment — granting White’s motion — would remain the same, and I therefore would affirm.
Accordingly, “under the facts and circumstances of this case [I would] reach the [privilege-waiver] argument.” Quicken Loans, 737 F.3d at 965.
B.
In 1996, with Jajfee, the Supreme Court resolved a circuit split by “recognizing] a psychotherapist privilege.” 518 U.S. at 7, 116 S.Ct. 1923. The Court concluded that a social worker’s notes from her counseling sessions with a police officer who had been sued for use of excessive force were protected from disclosure by the psychotherapist-patient privilege. The Supreme Court reasoned that “[e]ffective psychotherapy ... depends upon an atmosphere of confidence and trust” and that “the mere possibility of disclosure” of “confidential communications made during counseling sessions” could hinder productive therapy. Id. at 10, 116 S.Ct. 1923.
The Supreme Court found that, like other testimonial privileges, the psychothera *137 pist privilege serves the greater public interest by facilitating effective mental health care — “a public good of transcendent importance.” Id. The Court concluded that a “privilege protecting confidential communications between a psychotherapist and her patient ‘promotes sufficiently important interests to outweigh the need for probative evidence.’ ” Id. at 9-10, 116 S.Ct. 1928 (quoting Trammel v. United States, 445 U.S, 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)).
Nevertheless, because such privileges “ ‘impede[ ] the full and free discovery of the truth,’ ” they must be “narrowly construed.’ ” In re Grand Jury Subpoena, 341 F.3d at 335 (quoting Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir.1998)). They are thus “‘recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.’ ” Id.
Accordingly, like other privileges, the psychotherapist-patient privilege is not absolute. The Supreme Court noted that “[although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way.” Jaffee, 518 U.S. at 18 n. 19, 116 S.Ct. 1923. The Supreme Court identified one such potential exception — where “a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.” Id.
Finally, the Supreme Court recognized that a patient may waive the psychotherapist-patient privilege. Id. at 15 n. 14, 116 S.Ct. 1923 (“Like other testimonial privileges, the patient may of course waive the protection.”). Thus, this Court later held that “[a] patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it. A waiver may occur when the substance of therapy sessions is disclosed to unrelated third parties, or when the privilege is not properly asserted during testimony.” United States v. Bolander, 722 F.3d 199, 223 (4th Cir.), cert. denied, — U.S.-, 134 S.Ct. 549, 187 L.Ed.2d 392 (2013) (citations and parentheticals omitted).
In Bolander, the patient “failed to assert the psychotherapist patient privilege during his ... deposition. During that deposition, [he] was asked questions about his participation in [a sex offender treatment program]. He did not assert any privilege with respect to the information he provided in the [program], including the documents generated by the program. Instead, [he] openly discussed his participation .... ” 722 F.3d at 223. We held that “[b]y answering questions without asserting the psychotherapist patient privilege, [the patient] waived any privilege he may have enjoyed.” Id.
Our analysis in Bolander relied on Hawkins, 148 F.3d 379, a case involving the longstanding attorney-client privilege, to which the Supreme Court, too, analogized the psychotherapist-patient privilege. See Jaffee, 518 U.S. at 11, 116 S.Ct. 1923. In Hawkins, we noted that the “client is the holder” of the privilege, as is the patient in the psychotherapy context, “and can waive it either expressly, or through conduct.” 148 F.3d at 384 n. 4 (citations and paren-theticals omitted); see also Koch v. Cox, 489 F.3d 384, 391 (D.C.Cir.2007) (noting that a plaintiff “waives the psycho-therapist-patient privilege when ... he does the sort of thing that would waive the attorney-client privilege”).
In Hawkins, a former husband alleged that his former wife illegally recorded telephone conversations between him and his girlfriend. In her deposition, the former wife answered questions about whether *138 her lawyer had advised her regarding the wiretap:
Q: Is it true or not that Larry Diehl, in his capacity as your [divorce] attorney, told you to take a wiretap off the phone at the marital residence?
A: No, sir. Because I wouldn’t have discussed that with him, since it didn’t happen. So, therefore, he would have no need to make mention of that to me.
Hawkins, 148 F.3d at 381. We observed that “[a]lthough the question asked during the deposition clearly elicited information regarding confidential communications [the former wife] may have had with [her lawyer], and was objectionable on its face on the ground of attorney-client privilege, neither [the former wife] nor her attorney asserted an objection.” Id.
In answering the question without raising a privilege objection, the former wife “waived the privilege as to the subject matter of the phone tap.” Id. at 384. And “[b]ecause the privilege had been impliedly waived by [the former wife], [the former husband] was entitled to question [the former wife’s lawyer] regarding the alleged wiretap.” Id.
As Hawkins illustrates, waiver through conduct, or “implied waiver,” “occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege.” Id. at 384 n. 4; see also, e.g., Hanson v. United States Agency for Int’l Dev., 372 F.3d 286, 294 (4th Cir.2004) (“Implied waiver occurs when a party claiming the privilege has voluntarily disclosed confidential information on a given subject matter to a party not covered by the privilege.”). This is because such a disclosure “vitiates the confidentiality that constitutes the essence of the ... privilege.” Hawkins, 148 F.3d at 384 n. 4. And disclosure “not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure.” Id.
The reasoning behind waiver in such circumstances is intuitive: “[A] judicial system that ignores publicly known information or information known to an adversary risks losing its legitimacy as a truth-seeking process.” Privileged Communications, 98 Harv. L.Rev. 1450, 1646 (May 1985). Indeed, “[o]ver time, public confidence in our legal system might be eroded ... by a general perception that the courts systematically exclude probative evidence” or the potential for “public disagreement with the factfinder’s decision.” Id. at 1646-47. It has, therefore, been suggested that “all disclosures that are likely to. lead to privileged material becoming either public or accessible to the privilege-holder’s legal adversary should be treated as waiving the privilege with respect to the matter disclosed.” Id. at' 1647.
In deeming communications impliedly waived, this Circuit has found waiver even in closed proceedings and pursuant to a subpoena. For example, in United States v. Bollin, we held that the defendant waived the attorney-client privilege as to certain transactions and communications with his attorney where he testified “before the grand jury pursuant to a subpoena” about those transactions and communications. 264 F.3d 391, 412 (4th Cir.2001).
We have also recognized implied waiver in the context of communications that predated the commencement of the litigation where the waiver issue had been raised. For example, in In re Grand Jury Subpoena, we held that the defendant waived the attorney-client privilege regarding whether a lawyer had aided him in answering a question on an immigration form when, in an earlier conversation with Federal Bureau of Investigation agents, the defendant had reported that he had answered the *139 form question as he did on the advice of an attorney. 341 F.3d 331. And in In re Grand Jury Subpoena, we indicated that while no “broad-based” waiver occurred, a client’s identity and certain documents identified in a subpoena were no longer confidential, and any privilege associated with them was waived, when the client authorized his attorney to convey to the lawyer representing parties threatening suit his motives for seeking legal advice. 204 F.3d 516, 522 (4th Cir.2000).
Viewing these cases holistically, they indicate that in this Circuit, privileges such as the psychotherapist-patient privilege must be construed narrowly and may be waived, including impliedly. And implied waiver may be effectuated by disclosure to third-parties before the litigation at hand commences and by providing information in response to a court command such as a subpoena.
C.
Turning now to the case at hand, during her plea hearing in open court, Kinder told the district court that she took numerous medications, including anti-depressants, anti-anxiety drugs, and muscle relaxers. Kinder revealed that she had been diagnosed with bipolar disorder and schizophrenia but that she did not know which drugs treated which conditions because her treatment providers “never told [her] that this is what I am prescribing you for schizophrenia.” Tr. of Plea Hr’g at 12, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. June 19, 2012).
Kinder detailed — well beyond what the district court asked — her extensive psychiatric issues and treatments. She explained that her metal health deteriorated after the birth of her son and that “it was just — just pretty much the way my life has went for the past 26 years, is in and out of hospitals and emergency rooms and what — because I didn’t know, they couldn’t tell me what was wrong with me. I was having panic attacks and they were telling me I just had a little anxiety and send me home....” Id. at 11. Kinder also reported multiple suicide attempts.
Kinder detailed her admissions to four hospital “psych wards”: Logan Regional Hospital, St. Mary’s Hospital, Thomas Memorial Hospital, and Highland Hospital. Id. at 7. She identified at least one of her treating physicians by name. Kinder also shared, for example, that she felt her doctors did not “really care[ ] enough to sit down and find out what was going on and most ... would just, you know, write me more drugs and send me home.” Id. at 13.
At no point during her extensive testimony did Kinder or her counsel express privilege concerns. Not once did either, for example, seek a side bar. Meanwhile, “counsel for [White]” — and who knows who else — “was present in the public gallery . during the proceeding to hear this entire discussion.” J.A. 97-98. Further, the transcript of “this entire discussion” is a filed document not under seal and thus publicly available for all to see.
White’s motion for early production of records was based on the information Kinder revealed during her plea hearing. He sought only limited treatment records, only from each of the four hospitals Kinder identified at her plea hearing, and only for use in his related criminal proceeding.
With her extensive testimony in open court, Kinder “vitiate[d] the confidentiality that constitutes the essence” of the psychotherapist-patient privilege as to the limited records White sought. Hawkins, 148 F.3d at 384 n. 4. She “voluntarily disclosed confidential information on [the pertinent] subject matter to a party not covered by the privilege” and thereby im *140 pliedly waived it. Hanson, 372 F.3d at 294.[3]
In my view, the fact that the testimony that constituted implied waiver here was prompted by the district court’s (limited) questioning is not dispositive. Cf. Bollin, 264 F.3d at 412 (holding that the defendant waived the attorney-client privilege as to certain transactions and communications with his attorney where he testified “before the grand jury pursuant to a subpoena” about the same). Nor is it disposi-tive that the testimony resulting in waiver predated the commencement of White’s criminal proceeding. See In re Grand Jury Subpoena, 341 F.3d 331 (holding that defendant waived the attorney-client privilege through an earlier conversation with federal agents); In re Grand Jury Subpoena, 204 F.3d at 522 (indicating that attorney-client privilege was waived by an earlier letter sent at client’s request upon threat of a civil suit).
In sum, I conclude that by discussing at length, in detail, and without any hint of privilege concerns, her mental health problems and treatments in open court, Kinder extinguished the confidentiality of those subjects and thereby waived her ability to block White’s access to directly-related records by claiming privilege. The district court therefore did not err in authorizing a limited release of certain of Kinder’s records to White for use in his related criminal proceeding.
m.
For the reasons above, I would affirm the district court’s grant of White’s motion for early production of records. Accordingly, I respectfully dissent.

. On the contrary, Kinder suggested that she had repeatedly shared the information with others before, lamenting that she "should probably write these [details about her mental health diagnoses and treatments] down because people ask me a lot.” Tr. of Plea Hr'g at 12, United States v. Kinder, No. 2:12-cr-00114 (S.D. W. Va. June 19, 2012).

. The government dismissed its first indictment against White and brought a second one because Kinder "contradicted the facts she had provided earlier" as the government's star witness in its case against White. J.A. 98. The trial was based on the second indictment.

. Kinder also permitted the disclosure of her mental health records for purposes of her presentence report. But the confidentiality of presentence reports — which routinely address "intensely personal matters" such as family history, mental health, and financial condition — "has always been jealously guarded." United States v. Trevino, 89 F.3d 187, 192 (4th Cir.1996). I would thus decline any invitation to downgrade the presentence report's confidentiality here.